**MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
Sabrina A. Beldner (SBN 221918)
Email:  sbeldner@mcguirewoods.com
Andrew W. Russell (SBN 280669)
Email: arussell@mcguirewoods.com
Natalie M. Lagunas (SBN 318634)
Email:  nlagunas@mcguirewoods.com
Sarah Y. Oh (SBN 322164)
Email:  soh@mcguirewoods.com
1800 Century Park East, 7ᵗʰ Floor
Los Angeles, CA 90067
Telephone:  (310) 315-8200
Facsimile:  (310) 315-8210

Attorneys for Defendants
AMERICAN WOODMARK CORPORATION
and RSI HOME PRODUCTS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY BOGUETT, individually, on a representative basis, and on behalf of all other similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMERICAN WOODMARK CORPORATION, a Virginia Corporation; RSI HOME PRODUCTS, INC., a Delaware Corporation; and DOES l through 20, inclusive;<br><br>    Defendants. | CASE NO.<br><br>[Riverside Superior Court Case No. CVRI2204300]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Complaint Filed:      10/05/2022<br>Complaint Served:   10/11/2022 |

1

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendants AMERICAN WOODMARK CORPORATION ("AWC") and RSI HOME PRODUCTS, INC. ("RSI") (collectively, "Defendants"), by and through their undersigned counsel, and without waiver or limitation of their right to compel individual arbitration of the claims asserted in this action, hereby remove the above-captioned action from the Superior Court of the State of California in and for the County of Riverside, to this Court on the grounds that this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), and all other applicable bases for removal.  In support of their Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendants aver as follows:

### PLEADINGS AND PROCESS

1.      On October 5, 2022, Plaintiff Ashley Boguett ("Plaintiff") filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of California in and for the County of Riverside, entitled *ASHLEY BOGUETT, individually, on a representative basis, and on behalf of all others similarly situated; vs. AMERICAN WOODMARK CORPORATION, a Virginia Corporation; RSI HOME PRODUCTS, INC., a Delaware Corporation; and DOES 1 through 20, inclusive;* Case No. CVRI2204300 (the "State Court Action"), a true and correct copy of which is attached hereto as **Exhibit A**.  Plaintiff's Complaint asserts seven (7) purported causes of action for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Failure to Timely Pay Final Wages; (6) Failure to Provide Accurate Itemized Wage Statements; and (7) Unfair and Unlawful Competition.  *See id.*, ¶¶ 37-113.

2.      On October 11, 2022, Defendants' registered agent for service of process was personally served with copies of the Summons and Complaint.  True and correct copies of the Summons, Complaint, and every other process, pleading, and order

served on Defendants in this action to date are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| **A** | Complaint |
| **B** | Summons |
| **C** | Civil Case Cover Sheet |
| **D** | Notice of Case Management Conference |
| **E** | Certificate of Counsel |
| **F** | Notice of Department Assignment |

3.     Defendants are informed and believe that the following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| **G** | Proof of Service of Summons – RSI |
| **H** | Proof of Service of Summons – AWC |
| **I** | Class Action Case Management Order #1 |

4.     Defendants are informed and believe that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

5.     Defendants are informed and believe that they are the only defendants that have been served with process in the State Court Action.  Defendants Does 1 through 20 have yet to be identified and are therefore disregarded for purposes of this removal. 28 U.S.C. § 1441(a).

**TIMELINESS OF REMOVAL**

6.     This action has not previously been removed to federal court.

7.     This Notice of Removal is timely under CAFA and pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading

setting forth the claim upon which such action or proceeding is based." Defendants
have filed this Notice of Removal within 30 days of October 11, 2022, the date on
which Plaintiff served Defendants' agent for service of process with the Complaint.
Thus, this action is being removed within 30 days of the first date upon which
Defendants were served, through service or otherwise, with any paper giving it
knowledge that the action was indeed removable.

### REMOVAL JURISDICTION – CAFA JURISDICTION

8.    Defendants aver that this Court has original subject matter jurisdiction
over this action pursuant to CAFA, 28 U.S.C. § 1332(d)(2). Under CAFA, this Court
has jurisdiction over class actions where any member of the class is a citizen of a state
different from any defendant, and where the aggregate amount in controversy exceeds
the sum of $5 million, exclusive of interest and costs, and the number of members of
all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C.
§ 1332(d)(2)-(6). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

9.    There is no presumption against removal under CAFA. *Dart Cherokee
Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 550, 554 (2014) ("Dart Cherokee")
("no antiremoval presumption attends cases invoking CAFA, which Congress enacted
to facilitate adjudication of certain class actions in federal court"). To the contrary,
"CAFA's 'provisions should be read broadly, with a strong preference that interstate
class actions should be heard in federal court if properly removed by any defendant.'"
*Id*. at 554, quoting S. Rep. No. 109-14, p. 43 (2005).

10.    This Court has jurisdiction over this case under CAFA, and this action is
one which may be removed to this Court by Defendants because: (1) the number of
members of all proposed plaintiff classes in the aggregate is more than 100 class
members; (2) there is diversity of citizenship between Plaintiff and Defendants; and
(3) under the applicable preponderance of the evidence standard, the amount in
controversy for all class members exceeds $5,000,000.00.

11. Removal to this Court is proper because the action was filed and is pending in the Superior Court of the State of California in and for Riverside County, which is within this judicial district. 28 U.S.C. §§ 84(a), 1446(a).

### *This is a Class Action*

12. CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") that authorize an action to be brought by one or more representative persons as a class action.

13. Plaintiff brings this action on behalf of herself and a putative class defined as:

> "All current and former nonexempt employees employed by Defendants in California during the Relevant Time Period."

*See* Exh. A. (Complaint), ¶ 27. The Complaint further alleges that it is brought "as a class action, pursuant to Code of Civil Procedure § 382" and it purports to seek class certification and relief on behalf of the "Class" and/or the "Represented Employees" identified by Plaintiff. *Id.* at ¶ 25, 27. Therefore, this action is a "class action" under CAFA, and the "Relevant Time Period" as pled by Plaintiff in the Complaint is "four years prior to the filing of this action until class certification", i.e., October 5, 2018 to the present. *Id.* at ¶ 26.

### *Minimal Diversity of Citizenship Exists*

14. Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

15. **Plaintiff's Citizenship.** Plaintiff's Complaint alleges that she "performed work for Defendants in Riverside County." *See* Exh. A. (Complaint), ¶ 16. Furthermore, Defendants are informed and believe that Plaintiff currently resides in and intends to indefinitely remain living continuously in California, since Plaintiff's home address during her employment with Defendant AWC was in Moreno Valley, California. Accordingly, Plaintiff is a citizen of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is

1   domiciled); *Mondragon v. Cap. One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013)

2   (holding that, in connection with removal to federal court, a person's continuing

3   domicile in a state establishes citizenship "unless rebutted with sufficient evidence of

4   change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (holding that California

5   was the state of domicile for a party with a California residential address).

6        16.   **Defendant AWC's Citizenship.**   Defendant AWC is a Virginia

7   corporation with its corporate headquarters and principal place of business in

8   Winchester, Virginia.  *See* California Secretary of State Business Search at

9   https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "American

10  Woodmark Corporation").  At its corporate headquarters in Virginia, AWC's officers

11  direct, control, and coordinate AWC's activities, and the majority of its executive and

12  administrative functions are performed there.  Thus, AWC is not a citizen of California,

13  but rather, was and is a citizen of Virginia.  *See* 28 U.S.C. § 1332(c)(1) (for diversity

14  purposes, "[a] corporation shall be deemed a citizen of any State by which it has been

15  incorporated and of the State where it has its principal place of business"); *see also*

16  *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (the "'principal place of business' is

17  best read as referring to the place where a corporation's officers direct, control, and

18  coordinate the corporation's activities," and in practice, the principal place of business

19  "should normally be the place where the corporation maintains its headquarters –

20  provided that the headquarters is the actual center of direction, control, and

21  coordination").

22       17.   **Defendant RSI's Citizenship.** Defendant RSI is a Virginia corporation

23  with its corporate headquarters and principal place of business in Winchester, Virginia.

24  *See* California Secretary of State Business Search at

25  https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "RSI Home

26  Products, Inc.").  At its corporate headquarters in Virginia, RSI's officers direct,

27  control, and coordinate RSI's activities, and the majority of its executive and

28  administrative functions are performed there.  Thus, RSI is not a citizen of California,

but rather, was and is a citizen of Virginia.  *See* 28 U.S.C. § 1332(c)(1) (for diversity purposes, "[a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); *see also Hertz Corp.,* 559 U.S. at 92-93.

18.    **Doe Defendants.**  DOES 1 through 20 are fictitious defendants whose citizenship is disregarded for purposes of removal.  See 28 U.S.C. § 1441(a).

19.    Accordingly, Defendants are not citizens of the State of California but, rather, are citizens of the State of Virginia for the purpose of determining jurisdiction, while Plaintiff was and is a citizen of the State of California.  *See* 28 U.S.C. § 1332(d)(10).  Thus, the minimum diversity requirement under CAFA is satisfied.  28 U.S.C. § 1332(d)(2) (providing that CAFA jurisdiction exists over any civil action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### *Size of Proposed Class*

20.    According to Plaintiff's Complaint, "[t]he potential members of the Class as defined are so numerous that a joinder of all Represented Employees is impracticable."  *See* Exh. A (Complaint), ¶ 32.  Indeed, Defendants currently employ more than 100 individuals as hourly-paid, non-exempt employees in California, and have collectively employed more than 100 individuals in California at all times since October 5, 2018.  Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA.  *See* 28 U.S.C. § 1332(d)(5)(B).

### *The $5 Million Amount in Controversy Threshold is Satisfied*

21.    Defendants aver based on the following calculations that the amount in controversy exceeds $5,000,000.00 only for the purpose of establishing subject matter jurisdiction under CAFA.  Defendants' allegations and calculations are not admissions

1  of liability or damages with respect to any aspect of this case, or to the proper legal

2  test(s) applicable to Plaintiff's allegations, or whether a class action is proper.[1]

3      22.    Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of

4  removal need only contain plausible allegations to demonstrate the amount in

5  controversy.  Evidentiary submissions are **not required** unless and until the removing

6  defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart Cherokee*, 135 S.Ct. at 554.

7

8

9

10

11

12      23.    A plaintiff's complaint is a court's "first source of reference in

13  determining the amount in controversy."  *LaCrosse*, 775 F.3d at 1202 (citing *St. Paul

14  Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  As such, the ultimate

15  inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what a

16  court or jury might later determine to be the actual amount of damages, if any.[2]

17

_____

18  [1] *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203

19  (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to

20  challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir.

21  2015)).

22  [2] *See Ibarra*, 775 F.3d at 1198 n.1, (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in

23  controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal") (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers,

24  Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a

25  removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' . . . for jurisdictional purposes,

26  [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy

27  requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the

28  ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

24.     Furthermore, as confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15, 417-18 (9th Cir. 2018), "the amount in controversy is not limited to damages incurred prior to removal . . . [r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Accordingly, the amount in controversy may include all relief available to Plaintiff through the end of trial.

25.     The claims of the individual putative class members ("PCMs") in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[3]

26.     Plaintiff and the PCMs seek, *inter alia*, unpaid wages, liquidated damages, penalties, interest, attorneys' fees and costs, injunctive relief and/or restitution, declaratory judgment, benefits, and interest. *See* Exh. A (Complaint), ¶¶ 12, 46, 59, 71, 81 and Prayer for Relief. As CAFA authorizes the removal of class actions in which, among the other factors mentioned above, Defendants aver that the

---

[3] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

aggregate amount in controversy for these types of damages sought for all of the PCMs exceeds $5,000,000.00 and therefore, the amount in controversy as sought in the Complaint exceeds that jurisdictional minimum.  *See* 28 U.S.C. § 1332(d).

27.   At this juncture, Defendants' payroll, operational and employment data for those PCMs comprised of current and former non-exempt employees in California who worked for Defendants during the three-year period from October 5, 2019 through October 5, 2022 was used and analyzed to determine the CAFA amount in controversy for purposes of this Notice of Removal.  That data can be summarized as follows:

(a) For the period from October 5, 2019 to October 5, 2022 (the "3-Year SOL Period");[4]

i.   At least 1,332 PCMs were employed by Defendants;

ii.  At least 626 PCMs separated from their employment with Defendants (the "Terminating PCMs");

iii. Those PCMs worked an aggregate total of 314,467 workdays;

iv.  The average length of the workday by the PCMs working in the 3-Year SOL Period was more than eight (8) hours per workday; and

---

[4] At the outset, Plaintiff asserts a claim under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* (the "UCL"), which is predicated on her California Labor Code claims.  *See* Exh. A (Complaint), ¶¶ 101-113.  Thus, as her proposed class definition reflects, she asserts that the UCL's four-year limitations period should be applied to each of her underlying Labor Code wage claims.  *See, e.g., Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) ("Because Plaintiffs have pled a claim under the UCL, this four-year period applies."); *Van v. Language Line Servs., Inc.*, 2016 WL 3143951, at *9 (N.D. Cal. June 6, 2016) (same).  Notwithstanding, Defendants have opted to utilize a **three-year** limitations period (instead of a four-year limitations period) and a mere 10% violation rate to calculate the purported amount in controversy with respect to Plaintiff's meal period and rest break claims, which is ***extremely*** conservative and ***underestimated*** for purposes of this Motion.  Furthermore, as discussed below, Defendants have not included any estimated amount in controversy for Plaintiff's claims for failure to pay minimum and/or overtime wages, or for her prayer for statutory attorneys' fees—a sum which ***far exceeds seven figures*** alone.  Accordingly, if challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the amount in controversy.

v.  The average effective hourly rate of pay for hours worked by PCMs in the 3-Year SOL Period was $20.45 per hour;

vi.  The average final hourly rate of pay for Terminating PCMs in the 3-Year SOL Period was $17.57 per hour.

(b) For the period from October 5, 2021 to October 5, 2022 (the "1-Year SOL Period");

i.  As least 1,060 PCMs were employed by Defendants as non-exempt employees in California; and

ii.  These 1,060 PCMs were issued an aggregate total of 19,184 wage statements, which wage statements were issued on a bi-weekly basis.

### *Third Cause of Action: Failure to Provide Meal Periods*

28.  In support of her Third Cause of Action for failure to provide meal periods, Plaintiff alleges that "[a]t all relevant times herein," Plaintiff and the PCMs were "denied the 30-minute meal periods to which they were entitled" as a result of Defendants' "policies and practices."  *See* Exh. A (Complaint), ¶ 65.  Specifically, Plaintiff alleges that Plaintiff and the PCMs were "(1) unable to take a meal period due to workload, (2) forced to take an on-duty meal period while under the control of [Defendants], (3) forced to take a shortened meal period, (4) forced to take a meal period after the 5th hour of work, and (5) not provided mandated second meal periods for shifts in excess of 10 hours."  *Id.*  Plaintiff further alleges that Defendants "violated Labor Code §§ 226.7, 512, and the applicable IWC Wage Order ***every pay period***…" *Id.* at ¶ 67 (Emph. added).

29.  Based on Plaintiff's allegations, including her contention that she and the PCMs experienced meal period violations "every pay period", Defendants could reasonably assume that each of the PCMs will claim to have not been provided nor paid for *at least one* non-compliant meal period *each day* they worked during a four-year period prior to the filing of the Complaint.  *See*, *e.g.*, *Archuleta v. Avcorp*

*Composite Fabrication, Inc.*, 2018 WL 6382049, at \*4-5 (C.D. Cal. Dec. 6, 2018) (Gutierrez, J.) (finding use of 100% violation rate permissible where the complaint alleged a "consistent policy of violations" and "does not allege a more precise calculation" to dispute the violation rate proffered by the employer) (int. quot. omitted); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, \*4 (C.D. Cal. May 21, 2015) (King, J.) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violation rate is an impermissible assumption"); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at \*6 (C.D. Cal. July 28, 2015) (Wilson, J.) (finding use of a 100% violation rate was reasonable where plaintiff alleged that defendant failed to provide compliant meal and/or rest breaks and accurate wage statements "at all material times"). Notwithstanding the above, for purposes of calculating the amount in controversy for this removal, Defendants *conservatively* assume that Plaintiff and the PCMs will claim to have experienced a meal period violation one day out of every ten days worked (i.e., a 10% violation rate), or *one* violation "every pay period," during the 3-Year SOL Period.[5]

30.   Therefore, based on Defendants' above-summarized data, which shows that the PCMs worked at least 314,467 days during the 3-Year SOL Period, and were paid an average effective hourly rate of $20.45 during that time period, Defendants *conservatively* calculate the amount in controversy on Plaintiff's claim for unpaid *meal period* compensation as follows:

---

[5] As noted above, Defendants have used a shorter three-year limitations period as opposed to the four-year limitations period pursuant to Plaintiff's UCL claim for purposes of calculating the amount in controversy for Plaintiff's meal period and rest break claims, which *significantly* underestimates the amount in controversy for both of these claims. *See* fn. 4, *supra.*

| Average Hourly Rate | Total Number of Workdays | Workdays Meal Period Violation Rate | Amount In Controversy |
|---|---|---|---|
| $20.45 | 314,467 | 10% | $643,085.02 |

31.  Accordingly, the amount in controversy on Plaintiff's claim that she and other PCMs were not provided meal periods is at least **$643,085.02**.[6]

### *Fourth Cause of Action: Failure to Provide Rest Breaks*

32.  In support of her Fourth Cause of Action for failure to provide rest breaks, Plaintiff alleges that "[a]t all relevant times" Plaintiff and the PCMs did not receive "10 minutes of net rest break time for every 4 hours worked, or major fraction thereof, as mandated by California law"  *See* Exh. A (Complaint), ¶¶ 77.  Plaintiff further alleges that Defendants "did not schedule rest breaks"; that Plaintiff and the PCMs "were unable to leave the premises for breaks"; that they were "often not authorized and/or permitted to take mandated rest breaks due to being overwhelmed by their hectic workload"; and that "on occasions…Defendants failed to authorize and/or permit mandated third rest breaks."  *Id.*  Plaintiff further alleges that Defendants "violated Labor Code §§ 226.7, 512, and the applicable IWC Wage Order ***every pay period***…" *Id.* at ¶ 78.  (Emph. added).

33.  Therefore, based on Plaintiff's allegations, including her contention that she and the PCMs experienced rest break violations "every pay period", Defendants could reasonably assume that each of the PCMs will claim to have not been provided nor paid for *at least one* non-compliant rest break *each day* they worked during the *four*-year period prior to the filing of the Complaint.  *See*, *e.g.*, *Archuleta*, 2018 WL 6382049, at *4-5 (finding use of 100% violation rate permissible where the complaint

---

[6] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy.

alleged a "consistent policy of violations" and "does not allege a more precise calculation" to dispute the violation rate proffered by the employer) (int. quot. omitted); *Mejia*, 2015 WL 2452755, *4 (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violation rate is an impermissible assumption"); *Duberry*, 2015 WL 4575018, at *6 (finding use of a 100% violation rate was reasonable where plaintiff alleged that defendant failed to provide compliant meal and/or rest breaks and accurate wage statements "at all material times").    However, for purposes of calculating the amount in controversy for this removal, Defendants *conservatively* assume that Plaintiff and the PCMs will claim to have experienced a rest break violation one day out of every ten days worked (i.e., a 10% violation rate), or ***one*** violation "every pay period,"  during the 3-Year SOL Period.[7]

34.    Therefore, based on Defendants' above-summarized data, which shows that the PCMs worked at least 314,467 days during the 3-Year SOL Period, and were paid an average effective hourly rate of $20.45 during that time period, Defendants *conservatively* calculate the amount in controversy on Plaintiff's claim for unpaid *rest period* compensation as follows:

| Average Hourly Rate | Total Number of Workdays | Workdays Rest Break Violation Rate | Amount In Controversy |
|---|---|---|---|
| $20.45 | 314,467 | 10% | $643,085.02 |

---

[7] As noted above, Defendants rely on a three-year limitations period (instead of the standard four-year limitations period pursuant to Plaintiff's UCL claim) for purposes of calculating the amount in controversy for Plaintiff's meal period and rest break claims, which is ***extremely*** conservative and ***significantly*** underestimates the amount in controversy for these claims. *See* fn. 4, *supra.*

35.   Accordingly, the amount in controversy on Plaintiff's claim that he and other PCMs were not provided rest periods is at least **$643,085.02**.[8]

### *Sixth Cause of Action: Failure to Provide Accurate Itemized Wage Statements*

36.   In support of Plaintiff's Sixth Cause of Action for violation of Cal. Lab. Code § 226(a), Plaintiff alleges that Defendants failed to provide Plaintiff and the PCMs with accurate wage statements, which failed to accurately state "total hours worked"; "gross wages earned, all deductions, and net wages earned"; "the applicable hourly rates"; "the inclusive dates of pay period"; "the name and address of the legal entity of the employer"; and "the corresponding number of hours worked at each hourly rate." *See* Exh. A (Complaint), ¶ 94.  Plaintiff further alleges that Defendants' wage statements "directly violated Labor Code § 226(a) *each period* due to the failure to pay and report premium wages for denied meal periods and rest breaks…" *Id.* at ¶ 95. (Emph. added); *see also* ¶ 94 (alleging "Defendants violate Labor Code § 226(a) *every pay period*") (Emph. added).

37.   Plaintiff seeks for herself and the PCMs "the greater of all actual damages or fifty dollars ($50.00) per employee for the initial pay period…one hundred dollars ($100.00) per employee for each violation in subsequent pay periods, plus attorney's fees and costs". *Id.* at ¶ 100.  Under Cal. Lab. Code § 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226(a) is entitled to recover the greater of all actual damages *or* fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) *per employee*.  This type of claimed violation is normally subject to a one-year statute of limitations.

---

[8] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy.

38.     Given that Plaintiff alleges in the Complaint that Defendants violated Labor Code § 226 in "every pay period," (*see* Exh. A [Complaint], ¶¶ 94-95), the plain language of the Complaints supports the assumption that there is an "inaccuracy" in every single bi-weekly pay period within the 1-Year SOL Period.  *See, e.g., Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018) (Fitzgerald, J.) (holding 100% violation rate reasonable where plaintiff alleged in her complaint "that at all relevant times" defendants maintained a "policy and practice of issuing [inaccurate] wage statements"); *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) (Bernal, J.) (holding that assumption of "a 100% violation rate of section 226 is supported by allegations in the Complaint" where plaintiff alleged that defendants "uniformly and systematically" failed to furnish accurate itemized wage statements "[a]t all times herein"); *Nunes v. Home Depot U.S.A.,* 2019 WL 4316903 at *3 (E.D. Cal. Sept. 12, 2019)  (accepting 100% wage statement violation rate as reasonable where court accepted a 20% break violation rate which would have resulted in a wage statement inaccuracy in each pay period).

39.     Therefore, the amount in controversy on Plaintiff's Sixth Cause of Action for inaccurate wage statement violations during the 1-Year SOL Period for the 1,060 PCMs employed by Defendants who received 19,184 wage statements, is **1,865,400**, calculated as follows: ([1,060 PCMs x $50 initial violation] + [18,124 subsequent wage statements (19,184 – 1,060) x $100 subsequent violation]).  This sum represents an average per-PCM wage statement penalty of $1,759.81, far less than the statutory maximum of $4,000 per employee ($1,865,400 ÷ 1,060 PCMs).

### *Fifth Cause of Action: Failure to Timely Pay Final Wages*

40.     In support of her Fifth Cause of Action for unpaid wages, Plaintiff also seeks waiting time penalties under Labor Code § 203 ("Section 203") on behalf of herself and the PCMs.  *See* Exh. A (Complaint), ¶ 90.  Specifically, Plaintiff contends that Defendants employed a "policy and practice" whereby Plaintiff and the PCMs were "not paid all wages due and owing upon separation of employment" and that

because of Defendants "planned pattern and practice", Plaintiff and the PCMs are entitled to waiting time penalties. *Id.* at ¶¶ 87, 90.

41.    As set forth above, there are 626 PCMs whose employment terminated during the 3-Year SOL Period ("Terminating PCMs"), and those Terminating PCMs' average final hourly rate of pay during that same period was $17.57 per hour. Moreover, Plaintiff's Complaint alleges that "[a]t all relevant times" Plaintiff and other PCMs were required to "work hours in excess of 8 and/or 12 per day and/or 40 per week" such that Defendants can and do reasonably assume that Plaintiff and other PCMs worked an average 8-hour workday during the three-year period preceding the filing of the Complaint. *See id.*, ¶ 50.  Based on Plaintiff's allegations, it is reasonable to conclude that each PCM worked 8 hours per day for purposes of waiting time penalties, and given Plaintiff's allegations of experiencing a meal period violation "every pay period," (*see* Complaint, Exh. A at ¶ 67), it is reasonable to assume that each Terminating PCM experienced at least one wage or break violation during his or her employment that remained uncompensated at the time of separation from Defendant. *See, e.g.*, *Calderon v. BKB Constr., LP*, 2017 WL 2618094, at *6 (N.D. Cal. June 16, 2017) (accepting 8-hour assumption for waiting time penalties as reasonable where "Plaintiff's complaint alleges that he worked in excess of 8 hours a day"); *see also Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (Fischer, J.) (assuming maximum waiting time penalties were reasonable); *Altamirano v. Shaw Indus.,*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (based on the allegations, reasonable to assume all terminated employees suffered one incident of underpayment and awarding penalties for 30-day period).

42.    Consequently, Defendants *conservatively* calculate that the amount in controversy on Plaintiff's claim for failure to timely pay wages is **$2,639,716.80** [626 Terminating PCMs x ($17.57 average final hourly rate x 8 hours per day x 30 days)].[9]

### ***Summary of Amount in Controversy***

43.    Based on the foregoing, and as set forth in the below chart, the amount in controversy for the putative class action claims of the proposed class Plaintiff seeks to represent is not less than **$5,791,286.84, *without considering any amount in controversy on the following:*** (1) Plaintiff's First Cause of Action for ***Failure to Pay Minimum Wages***; (2) Plaintiff's Second Cause of Action for ***Failure to Pay Overtime Wages***; (3) any sums for any potential ***fourth year of statutory liability on Plaintiff's meal and rest break claims*** (see fn. 4, *supra*); and (4) ***Statutory Attorneys' Fees and Costs***:

| Cause of Action / Claim | Amount in Controversy |
|---|---|
| Failure to Provide Meal Periods (Third Cause of Action – Three Years Only) | $643,085.02 |
| Failure to Provide Rest Periods (Fourth Cause of Action – Three Years Only) | $643,085.02 |
| Violation of Labor Code § 226(a) (Sixth Cause of Action) | $1,865,400 |
| Waiting Time Penalties Pursuant to Labor Code § 203 (Fifth Cause of Action) | $2,639,716.80 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$5,791,286.84**[10] |

---

[9] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend the removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy.

[10] As noted above, Defendants have satisfied the CAFA $5 million amount in controversy without ascribing any value to Plaintiff's statutory claims for failure to pay minimum and/or overtime wages **_or_** her request for statutory attorneys' fees.

44.    Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including without limitation as to additional and/or different amounts in controversy, and as to traditional diversity and/or federal question jurisdiction.  Additionally, Defendants assume that the proposed class is as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserve and do not waive their position that the proposed class definition is improper and/or cannot be certified.

## NO CAFA EXCEPTIONS APPLY

45.    CAFA contains a number of exceptions to its grant of original jurisdiction. 28 U.S.C. §§ 1332(d)(3)-(5).  However, none of these exceptions are applicable here.

46.    The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3). However, the exception *only* applies where the "primary defendants are citizens of the State in which the action was originally filed." *See id.*  Here, the action was originally filed in the Superior Court of Riverside in the State of California and, as noted above, Defendants are *not* citizens of California.  They are citizens of Virginia.  Thus, this exception does not apply.

47.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of original jurisdiction based on the number of putative class members in the state in which the action was filed.  However, these exceptions also apply *only*

---

Even just using the 25% attorneys' fees benchmark routinely accepted in the Ninth Circuit would increase the current amount in controversy calculation by *$1,447,821.71* ($5,791,286.84 x 25%), and would easily bring the total amount in controversy well over $7,200,000.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth circuit precedent"); *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated fee award of twenty-five percent of the plaintiff's damages in calculating the amount in controversy).

where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II), 1332(d)(4)(B).  Given that this action was originally filed in California, and Defendant is a citizen of Colorado and Virginia, these exceptions also do not apply.

48.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions applicable to actions where defendants are government entities, or in which the putative class contains less than 100 members in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Defendants are not governmental entities and Plaintiff has alleged that a class that is "so numerous" and Defendants' above-described data establishes that the putative class in fact *far exceeds* 100 members, these exceptions also do not apply.

## RESERVATION OF RIGHTS

49.    Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by Defendants of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of Defendants' rights, claims, remedies, and defenses in connection with this action (including, without limitation, their right to compel arbitration of the claims asserted in this action), all of which are hereby fully and expressly reserved.

## NOTICE TO PLAINTIFF

50.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be served on Plaintiff's counsel of record:

Brian J. Mankin
Peter J. Carlson
LAUBY, MANKIN & LAUBY LLP
5198 Arlington Avenue, PMB 513
Riverside. CA 92504

In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the State of California in and for the County of Riverside.

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed to this United States District Court for the Central District of California from the Superior Court of the State of California in and for the County of Riverside to this Court.

DATED: November 10, 2022          **MCGUIREWOODS LLP**

By:          /s/ Sabrina A. Beldner
          Sabrina A. Beldner / Andrew W. Russell
          Natalie M. Lagunas / Sarah Y. Oh
          Attorneys for Defendants AMERICAN
          WOODMARK CORPORATION
          and RSI HOME PRODUCTS, INC.

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 1800 Century Park

4

East, 7th Floor, Los Angeles, CA 90067.

5

        On November 10, 2022, I served the following document(s) described as **DEFENDANT'S
NOTICE OF REMOVAL OF CIVIL ACTION** on the interested parties in this action by

6

placing true copies thereof enclosed in sealed envelopes addressed as follows:

7

 Brian J. Mankin                                    Attorneys for Ashley Boguett
 Peter J. Carlson

8

 LAUBY, MANKIN & LAUBY LLP
 5198 Arlington Avenue, PMB 513

9

 Riverside, CA 92504

10

☒    **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing
        correspondence for mailing with the United States Postal Service.  Under that practice, it

11

        would be deposited with the United States Postal Service that same day in the ordinary
        course of business.  Such envelope(s) were placed for collection and mailing with postage

12

        thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business
        practices.  (C.C.P. § 1013 (a) and 1013a(3))

13

☐    **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted

14

        electronically to the above addressees. (C.C.P. § 1010.6)

15

☐    **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility
        regularly maintained by the overnight service carrier, or delivered such document(s) to a

16

        courier or driver authorized by the overnight service carrier to receive documents, in an
        envelope or package designated by the overnight service carrier with delivery fees paid or

17

        provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

18

☐    **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered the addressee(s).
        (C.C.P. § 1011)

19

20

        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

21

        Executed on November 10, 2022, at Los Angeles, CA.

22

                                                                _____
                                                                        Matthew Whitney

23

24

25

26

27

28